IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INTERMETRO INDUSTRIES CORP** : |
|           **Plaintiff** : |
| VS. : | 3:CV-07-0075 |
| : | (JUDGE VANASKIE) |
| **JONATHAN SCOTT KENT** : |
|           **Defendant** : |

**MEMORANDUM**

Plaintiff InterMetro Industries Corporation ("InterMetro"), a Pennsylvania corporation, initiated this action to enjoin its former employee, Jonathan Scott Kent, a citizen of the State of Texas, from violating a one-year, nationwide covenant not to compete. Presently before the Court is InterMetro's Motion for a Temporary Restraining Order to block Mr. Kent from working in Texas with his current employer, InnerSpace Corporation.[1] (Dkt. Entry 10.) For the reasons set forth below, I will grant InterMetro's motion so that the status quo may be maintained pending a preliminary injunction hearing.

**DISCUSSION**

InterMetro seeks a temporary restraining order to prevent Mr. Kent from violating the following covenant not to compete:

For a period of one (1) year after the termination of this [General Employment]

---

[1] The motion has been fully briefed and a telephone conference was conducted on the motion on February 1, 2007.

> Agreement, the EMPLOYEE shall not, within the continental United States, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by the EMPLOYER at the time this Agreement terminates.

(Mr. Kent's General Employment Agreement, Compl. Ex. A (Dkt. Entry 1-1) ¶ 8.) Mr. Kent agreed to this non-compete provision as part of the agreement he signed when he joined InterMetro in April of 2000. He left the employ of InterMetro in January of this year to accept a position with InnerSpace Corporation, which allegedly competes with InterMetro in providing storage products, including carts, cabinets and shelving systems, to the healthcare market.

When considering a request for immediate injunctive relief, a court must carefully weigh four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits;
>
> (2) whether the movant will be irreparably injured by denial of such relief;
>
> (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and
>
> (4) whether granting preliminary relief will be in the public interest.

SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985). The burden is on the movant to produce "evidence sufficient to convince the district court that all four factors favor preliminary relief." American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

2

Mr. Kent argues that InterMetro cannot establish a reasonable probability of success on the merits because the non-compete clause at issue is unenforceable under Texas law. InterMetro contends that Texas law is not controlling. Instead, asserts InterMetro, this Court must apply Pennsylvania law in accordance with the choice of law provision in Mr. Kent's employment agreement.[2] InterMetro claims that the non-compete clause is enforceable under Pennsylvania law. Thus, InterMetro avers that it is likely to succeed on the merits. The central issue for resolution of the motion for a temporary restraining order, therefore, is whether Texas or Pennsylvania law governs the non-compete clause.[3]

---

[2] Paragraph 10 of the General Employment Agreement executed by Mr. Kent and InterMetro, in pertinent part, provides:

> EMPLOYEE acknowledges and agrees that, because EMPLOYER does business and has employees both throughout the United States and abroad, all matters concerning this Agreement will be governed by the laws of the Commonwealth of Pennsylvania.

(Mr. Kent's General Employment Agreement, Compl. Ex. A (Dkt. Entry 1-1) ¶ 10.)

[3] The parties have focused exclusively on the choice of law issue. It is appropriate that they do so as this is a threshold matter potentially dispositive of the entire case. It must be emphasized, however, that this Court's focus is on the question of whether the status quo, i.e., Mr. Kent not competing with InterMetro, should be preserved pending an evidentiary hearing that will provide an appropriate record for deciding all the elements of interim injunctive relief. At this stage of the case, InterMetro has made a sufficient showing on the equitable considerations governing a temporary restraining order request, i.e., a threat of irreparable harm, greater harm to it than Plaintiff if the covenant not to compete is not enforced, and the public interest weighing in favor of preserving the status quo, to have its request for immediate injunctive relief turn on the choice of law issue. Plaintiff's counsel assented to preserve the status quo for a brief period of time to allow this Court to give careful consideration to this

(continued...)

3

A federal court sitting in diversity must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497 (1941); Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006). Consequently, the Court will apply Pennsylvania's choice of law rules to this dispute.

When a conflict exists between the laws of Pennsylvania and the laws of another state,[4] Pennsylvania courts apply a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Griffith v. United Air Lines, 203 A.2d 796, 805 (Pa. 1964); see also Commonwealth v. Sanchez, 716 A.2d 1221, 1223 (Pa. 1998) (affirming Griffith as the governing standard for resolving conflict of law issues). Federal courts have interpreted Griffith to "mean that a court applying Pennsylvania law should use the Second

---

[3](...continued)
admittedly difficult issue. That the choice of law issue is decided in favor of InterMetro is not to be taken as an indication that it would prevail on all elements for a preliminary injunction following an evidentiary hearing. It should also be noted that Mr. Kent is not foreclosed from raising issues under Pennsylvania law that might concern the enforceability of the restrictive covenant. For example, courts in Pennsylvania have declined to enforce forum selection clauses in employment agreements on public policy grounds. See Dentsply International, Inc. v. Benton, 965 F. Supp. 574, 579 (M.D. Pa.1997) (refusing to enforce the forum selection clause in an employment contract on the grounds that the employer-employee relationship is so inherently unequal).

[4] A choice of law analysis is not necessary if there is no conflict between the laws of two states. Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006); Wilson v. Transport Ins. Co., 889 A.2d 563, 571 (Pa. Super. Ct. 2005). For purposes of InterMetro's Motion for a Temporary Restraining Order, the parties are willing to concede that a conflict exists between the application of the laws of Pennsylvania and Texas.

Restatement of Conflict of Laws as a starting point, and then flesh out the issue using an interest analysis." Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006); see also Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55-56 (3d Cir. 1994) (applying Restatement (Second) of Conflict of Laws).

This case involves a challenge to the choice of law provision in Mr. Kent's employment contract. Courts applying Pennsylvania law "generally honor the intent of the contracting parties and enforce the choice of law provisions in contracts executed by them." Kruzits, 40 F.3d at 55. Under section 187(2) of the Restatement (Second) of Conflict of Laws, courts will apply the law of the state chosen by the parties, unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Id. § 187(2).

Mr. Kent concedes that the requirements of section 187(2)(a) are not met for the purposes of InterMetro's motion. (Def.'s Br. Opp. (Dkt. Entry 16-1) at 13 n.6.) In this regard, Pennsylvania does have a substantial relationship to this matter as it is where InterMetro maintains its principal place of business, and there is indeed a reasonable basis for the parties

agreeing to make Pennsylvania law controlling. The choice of law provision, therefore, will be enforced unless the requirements of section 187(2)(b) are met.

Under section 187(2)(b), a court must first determine which state's law would apply under section 188 in the absence of an effective choice of law by the parties. For purposes of this matter, InterMetro does not dispute that Texas law would apply.

The next inquiry under section 187(2)(b) is whether application of Pennsylvania's law on covenants not to compete would be "contrary to a fundamental policy" of Texas. It is evident that Texas has a fundamental policy to enforce reasonable covenants not to compete.[5] See Alex Sheshunoff Management Services v. Johnson, 209 S.W.3d 644, 655 (Tex. 2006). It is also undisputed that Pennsylvania enforces reasonable covenants not to compete. See John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc., 369 A.2d 1164, 1168 (Pa. 1977). Mr. Kent, however, argues that *application* of Pennsylvania law is "contrary to" Texas policy because Pennsylvania and Texas courts disagree on what constitutes sufficient consideration for a

---

[5] Texas sets forth its policy regarding non-compete clauses in the Texas Business & Commerce Code, which states:

> a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code Ann. § 15.50.

6

covenant not to compete. Specifically, Texas courts find that a promise to employ a person in an at-will employment relationship is an illusory promise and, therefore, may be insufficient consideration for a covenant not to compete, Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642, 644-45 (Tex. 1994),[6] while Pennsylvania courts find such a promise to be sufficient consideration. Modern Laundry & Dry Cleaning Co. v. Farrer, 536 A.2d 409, 411 (Pa. Super. Ct. 1988).

However, issues of contract law, such as the existence of consideration, do not necessarily implicate a strong public policy. Restatement (Second) of Conflict of Laws § 187(2)(b), cmt. g (1971); Barnes Group, Inc. v. C & C Products, Inc., 716 F.2d 1023, 1031 n.21 (4th Cir. 1983) (distinguishing contracts invalid as a matter of public policy and invalid based on contractual interpretation).[7] Indeed, illustration 8 of the Restatement (Second) of Conflict of

---

[6] Texas courts find such a promise illusory because an at-will employment agreement is non-binding on the employer "who always retains the option of discontinuing employment in lieu of performance." Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642, 644-45 (Tex. 1994).

[7] Comment g to Section 187 of the Restatement (Second) of Conflict of Laws, in pertinent part, provides:

> To be "fundamental," a policy must in any event be a substantial one. Except perhaps in the case of contracts relating to wills, a policy of this sort will rarely be found in a requirement, such as the statute of frauds, that relates to formalities (see Illustration 6). Nor is such policy likely to be represented by a rule tending to become obsolete, such as a rule concerned with the capacity of married women (see Illustration 7), <u>or by general rules of contract law, such as those concerned with the need for consideration</u> (see Illustration 8). On the other hand, a fundamental policy may be embodied in a statute which makes one or more

(continued...)

Laws § 187(2)(b) involves a situation similar to the matter before the Court, and advises that the parties' contractual choice of law be enforced even though applying the choice of law provision would enforce a contract that would be invalid for lack of consideration in the state whose law would otherwise apply.[8]  Similarly, this Court will not override the parties' choice of law simply because Texas and Pennsylvania courts differ on whether an at-will employment offer is sufficient consideration.

That Texas decisional law on the sufficiency of consideration for a restrictive covenant in an at-will employment context is _not_ a matter of fundamental policy is illustrated by the Texas Supreme Court's holding in Alex Sheshunoff Management Services v. Johnson, 209 S.W.3d

---

[7](...continued)
kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.

Id. (emphasis added).  In this case, Mr. Kent has not pointed to any statute that would make the restrictive covenant unenforceable due to "oppressive use of superior bargaining power." Indeed, Texas statutory law is supportive of enforcing reasonable covenants not to compete.

[8] Illustration 8 is as follows:

8. A executes and delivers to B in state X an instrument in which A agrees to indemnify B against all losses arising from B's liability on a certain appeal bond on behalf of C, against whom a judgment has been rendered in state Y.  The instrument recites that it shall be governed by the law of Y.  It is valid and enforceable under the local law of Y but is unenforceable for lack of consideration under the local law of X.  In an action by B against A, the instrument will not be held invalid for lack of consideration.

8

644 (Tex. 2006). In that recent decision, the Texas Supreme Court modified its ruling in Light by holding that a covenant not to compete is enforceable when an employee also agrees not to divulge confidential information, the employer promises to furnish the at-will employee with confidential information and specialized training, and the employer performs on its promise after the contract is formed, thus making the non-compete provision ancillary to an otherwise enforceable agreement. Id. at 650-55. In reaching this result, the court declared that it now "disagree[d] with language in Light stating that the Covenants Not to Compete Act requires the agreement containing the covenant to be enforceable the instant the agreement is made." Id. at 646. The Court further observed that the aim of the Texas legislature in enacting the Covenants Not to Compete Act was to promote enforcement of non-compete provisions in the at-will employment context, id. at 652, explaining that "in 1993, the Legislature specifically wanted to make clear that covenants not to compete in the at-will employment context were enforceable." Id. at 654. The court embraced the aim of the legislature by stating:

> We also take this opportunity to observe that section 15.50(a) does not ground the enforceability of a covenant not to compete on the overly technical disputes that our opinion in Light seems to have engendered over whether a covenant is ancillary to an otherwise enforceable agreement. Rather, the statute's core inquiry is whether the covenant 'contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.' Tex. Bus. & Com. Code § 15.50(a). Concerns that have driven disputes over whether a covenant is ancillary to an otherwise enforceable agreement – such as the amount of information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received – are better addressed in determining whether and to

9

what extent a restraint on competition is justified. <u>We did not intend in Light to divert attention from the central focus of section 15.50(a). To the extent our opinion caused such a diversion, we correct it today</u>.

Id. at 655-56 (emphasis added).

Thus, the Texas Supreme Court has made clear that fundamental policy of Texas supports enforcement of reasonable non-compete provisions in the at-will employment context. This recent opinion also poignantly illustrates the wisdom of not basing determinations of what constitutes "fundamental policy" on case law that attempts to delineate the parameters of adequate consideration or the degree to which a clause is ancillary to an employment contract.[9]

Application of Pennsylvania law in this case will not contravene the fundamental policy of Texas concerning covenants not to compete in the at will employment context. As noted above, there is a strong basis for concluding that the Texas legislature *intended* a promise to employ a person on an at-will basis to constitute adequate consideration for a covenant not to compete. See Tex. Bus. & Com. Code Ann. § 15.51(b); Jeffrey W. Tayon, *Covenants not to compete in Texas: Shifting Sands from Hill to Light*, 3 Tex. Intell. Prop. L.J. 143, 147, 149 (1995). That Texas courts might not find Mr. Kent's restrictive covenant enforceable does not

---

[9] In Mr. Kent's employment contract, he acknowledged that he would be provided with confidential information during his employment, (General Employment Agreement, Compl. Ex. A (Dkt. Entry 1-1) ¶ 4), and agreed not to divulge that information nor compete with InterMetro for a period of one year after termination of the Agreement. (Id. ¶ 8.) It appears uncontroverted that InterMetro supplied confidential information to Mr. Kent during the term of his employment. It may thus be that even under Texas precedents the covenant not to compete would be deemed ancillary to the employment contract.

10

suggest that a fundamental public policy would be damaged were the covenant to be found enforceable under Pennsylvania law. See Shipley Co. v. Clark, 728 F. Supp. 818, 825-26 (D. Mass. 1990) (fact that application of forum state's law would violate non-forum state's law does not mean that non-forum state's policy would be violated). A court is not to override contractually chosen law when it "diverges merely in degree from the state whose law would otherwise apply." Barnes Group, Inc. v. C & C Products, Inc., 716 F.2d 1023, 1030-31 (4th Cir. 1983); see also Restatement (Second) of Conflict of Laws § 187(2)(b), cmt. g (1971) ("The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.") The central question is whether application of Pennsylvania law "would cause a substantial erosion of the quality of protection" afforded under the Texas statute. Cottman Transmission Systems, Inc. v. Melody, 869 F. Supp. 1180, 1186 (E.D. Pa. 1994). Here, application of Pennsylvania law would not substantially erode the Texas legislature's intent in enacting its statute, as Pennsylvania courts apply standards for assessing covenants not to compete that are similar to those set forth in the Texas statute.[10]

---

[10] In light of this determination, there is no need to assess whether Texas "has a materially greater interest than [Pennsylvania] in the determination of" the enforceability of the non-compete agreement, the second part of the test presented in Section 187(2)(b) of the Restatement (Second) on the Conflict of Laws. It should be noted, however, that courts in Pennsylvania in similar circumstances have found that the non-forum state's interests with respect to restrictive covenants were not materially greater than Pennsylvania's. See Select
(continued...)

11

The Court is convinced that InterMetro has presented sufficient evidence to warrant the issuance of a temporary restraining order. Applying Pennsylvania law, InterMetro has shown a reasonable probability of success in enforcing Mr. Kent's covenant not to compete.[11] InterMetro has also established that it is threatened with irreparable harm if Mr. Kent is not enjoined from working at its competitor's business, as Mr. Kent's knowledge of InterMetro's business could harm its competitiveness. While the Court is sympathetic to the harm caused to Mr. Kent by enjoining him from working at InnerSpace, this harm is the consequence of his promise not to compete with InterMetro. Finally, issuance of a preliminary injunction would promote the public interest in enforcing valid covenants not to compete.

An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

[10](...continued) Medical Corp. v. Hardaway, No. Civ. A. 05-3341, 2006 WL 859741, at *3 (E.D. Pa. Mar. 24, 2006) (finding that Texas did not have a materially greater interest than Pennsylvania in enforcing restrictive covenant favoring a Pennsylvania business against Texas resident); BABN Technologies Corp. v. Bruno, No. Civ. A. 98-3409, 1998 WL 720171, at *4 (E.D. Pa. Sept. 2, 1998) (Georgia did not have a materially greater interest than Pennsylvania in enforcing restrictive covenant favoring a Pennsylvania business against Georgia resident).

[11] The Court, of course, is not ruling on the validity of Mr. Kent's covenant not to compete at this time, just whether InterMetro has established a reasonable probability of success in enforcing the non-compete clause. Mr. Kent may still challenge the breadth or reasonableness of the covenant.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**INTERMETRO INDUSTRIES CORP**    :
                                  :
        **Plaintiff**              :
VS.                               :    3:CV-07-0075
                                  :    (JUDGE VANASKIE)
**JONATHAN SCOTT KENT**            :
                                  :
        **Defendant**              :

ORDER

**AND NOW, THIS 12th DAY OF FEBRUARY, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion to for a Temporary Restraining Order (Dkt. Entry 10) is **GRANTED** as follows:

1. Until further order of this Court, Defendant Jonathan Scott Kent shall not perform any services for InnerSpace Corporation.

2. This Order shall be binding on Defendant and on all persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise.

3. InterMetro shall post a bond in the amount of $ 60,000 within five (5) business days of entry of this Order.

4. A hearing on InterMetro's motion for a preliminary injunction is scheduled to be held on **February 21, 2007, at 11:00 a.m.**[12] The parties are permitted to begin conducting

---

[12] A temporary restraining order expires no later than ten (10) days after its entry,
(continued...)

expedited discovery immediately.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

---

[12](...continued)
unless, for good cause shown, it "is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." Fed. R. Civ. P. 65(b). The date for the preliminary injunction hearing has been set to fall within the ten day operative period for a TRO. The parties are encouraged to confer to determine whether they can adequately prepare for the hearing on February 21, 2007, or would prefer to set another date for the hearing.